### STINE v. MOORE.
#### Civ. A. No. 4036.

United States District Court
W. D. Louisiana, Lake Charles Division.
Sept. 24, 1953.

Joe J. Tritico, George W. Liskow, Lake Charles, La., for plaintiff.

S. W. Plauche, Jr., Lake Charles, La., for defendant.

## DAWKINS, District Judge.

Plaintiff, a citizen of Cameron Parish, Louisiana, sues defendant as a citizen of Texas for alleged breach of a contract of lease, claiming large damages, in alternative situations as set out in the complaint. Defendant has moved to dismiss for lack of diversity of citizenship for the reason, as averred, he is also a citizen of this state.

Of course, the burden of proving jurisdiction based upon diversity or otherwise, when challenged, is upon plaintiff; but, when it was shown that defendant had a former domicile in the State of Texas the presumption was it continued and the burden shifted to defendant to prove the change. It is not disputed that, until the year 1947, following his marriage in 1946, defendant resided and had his domicile in the City of Orange, Texas. Since then, he has done many things which, on their face, tend to support the conclusion that he intended to continue his Texas citizenship, such as paying poll taxes and voting in that state, making returns and paying Louisiana income taxes as a nonresident, and maintaining a residence and Post Office Box through which he received some of his mail at his former address in Orange. He also made Federal income tax returns from that address.

However, the true test is, did he move to Louisiana with the bona fide intention of remaining here permanently? He has, beyond question, continued to live at Gum Cove Plantation in Cameron Parish, since moving there in 1947. He and his wife stated that they made this change on the advice of defendant's doctor and expect to continue there "from now on out". Of course, if defendant made the change of domicile from Texas to Louisiana, with the bona fide intention of living here for the rest of his life, or indefinitely, then his domicile and right to claim citizenship in Texas was immediately abandoned and forfeited, although the details, such as the time required to acquire the right to vote here and losing it there, were controlled by the particular laws of the two states. He could not be a citizen and have a domicile in both at one time. He could maintain as many residences, as distinguished from domicile, as he desired, but only one domicile or permanent home which fixed his citizenship in one or the other states.

Bouvier defines domicile as: "That place where a man has his true, fixed and permanent home and principal establishment, and to which whenever he is absent he has the intention of returning". Citing and quoting

from many cases. Bouvier's Law Dictionary, Rawle's Third Revision, page 915.

■ For purposes of diversity jurisdiction in the federal courts under Constitution and statute, one is a citizen of the state wherein he has his permanent home or domicile and any attempt to retain that status elsewhere, for motives other than a bona fide intention of returning to the former residence, are undoubtedly futile under the dual sovereignty of the National and State governments. If born in the United States or lawfully naturalized one remains an American citizen until, for valid reasons, it is lost or forfeited; but he may change his citizenship from one state to another at will, by taking up his abode permanently in the second and abandoning it in the first if he has no intention of returning there to live. Many people have a false idea that they can actually have their homes and live in one state permanently, and still maintain their domicile and right to vote in another. There is little doubt that if judicially tested such claims could not stand up. Hall v. Godchaux, 149 La. 733, 734, 90 So. 145, and authorities therein cited.

The following, taken from Vol. 35 C.J.S., Federal Courts, § 56, substantially states the law as settled by the decisions of the federal courts.

"Citizenship, with respect to the jurisdiction of the federal courts, has the same meaning as domicile; it imports permanent residence in a state with an intention of remaining, and is not dependent on birth. Although the place of residence is prima facie the domicile, residence alone is not the equivalent of citizenship; and citizenship in a particular state is not lost by absence therefrom, where the intention to return remains, even though such absence is protracted. Mere mental fixing of a residence or citizenship is not sufficient."

See cases cited in footnotes.

Without analyzing in detail the many cases cited by counsel on either side, it is sufficient to say that they all turn upon conclusions of fact as to whether the evidence showed, or failed to show establishment of a home at any given point, coupled with the intention of living there permanently. The things considered in determining this issue cited as either supporting or disputing the point were held to be such as logically tended to establish the conclusion reached. Every case must stand upon its own facts as found by the court.

In this instance, while as stated, defendant has done many things which if unexplained, would appear inconsistent with the intention of permanently residing in his present home, still he has lived there since 1947, having moved to Louisiana within the year after being married, on the advice of his doctor, and both he and his wife swore that it is their bona fide intention to remain here the rest of their lives. He has large farming and stock raising interests here, consisting of some 3500 acres of land and hundreds of registered fine blooded cattle, with a very large and commodious plantation home where his friends and associates visit. The house in Orange, which he still owns, is occupied by his mother and sisters, though a room or accommodations are kept for his use when he returns to visit in that city.

■■ No one can be certain beyond all doubt of what is in another's mind, and such matters as this must be determined both by what they say and their conduct which throws light upon that intent. Defendant testified that the tax returns were prepared and sent in by his tax accountant, although admittedly he signed them. There was a financial motive for using the status as a nonresident, to wit: the many types of high taxes imposed upon its citizens by Louisiana, ranking near the top for the nation. Most of us have enough self-interest to avoid these as far as it can be legally done and feel no compunction of conscience. His registering, but seldom voting in Texas after leaving there no doubt was done to thereby bolster these claims. The consequences civilly or criminally, when he really lived and intended to remain in Louisiana, as he now says, is a matter for the law enforcement agencies of that state. I am convinced that defendant is a citizen of Louisiana and cannot be sued

in the federal court by another citizen of that state. As to whether Louisiana can go back and compel him to pay increased taxes which he evaded, is something with which we have no concern.

The plea to the jurisdiction will be sustained. Proper decree should be prepared.