Ronald L. HOLLOWELL, Plaintiff,

v.

W. L. HUX and William Simmons, Defendants.

Civ. No. 806.

United States District Court
E. D. North Carolina,
Wilson Division.

April 30, 1964.

Lucas, Rand, Rose & Morris, Wilson, N. C., Ford & Avis, Newport News, Va., for plaintiff.

Cyrus F. Lee, Gardner, Connor & Lee, Wilson, N. C., for defendants.

LARKINS, District Judge.

## SUMMARY

This action is brought to recover damages for personal injuries arising out of a motor vehicle collision which occurred in Northampton County, North Carolina, on June 30, 1962. Jurisdiction of the court is based upon diversity of citizenship. The matter is now before the court upon defendants' motion to dismiss the suit for lack of jurisdiction on the ground that, at the time the complaint was filed, the plaintiff was a citizen and resident of the State of North Carolina, and not a citizen of the State of Virginia, as he has alleged. The motion was heard at New Bern, North Carolina and at that time the court took under advisement plaintiff's objection to the introduction of a marriage certificate. That objection is now overruled. Both parties have filed written memoranda pursuant to the hearing.

The question which the motion to dismiss raises is: What was the plaintiff's domicile or citizenship at the time he instituted this suit on December 7, 1962?

Having considered the oral testimony of the witnesses and argument of counsel at the hearing, the deposition upon oral examination of plaintiff, the briefs and pleadings, the court makes the following

## FINDINGS OF FACT

This plaintiff, who was born on December 4, 1940, was reared in Roanoke Rapids, North Carolina, where he lived with his parents and siblings. In 1957 or 1958 he quit high school and departed that city, going to Norfolk, Virginia, where he became gainfully employed and self-sustaining. In Norfolk he lived with his brother part of the time and elsewhere the remainder. He registered with the Selective Service Board in South Norfolk, Virginia and acquired a Virginia automobile operator's license. He established a checking account in a local bank there. Later he voluntarily enlisted in the United States Army in South Norfolk, Virginia for a three-year obligation.

While serving overseas in July 1961, the plaintiff was called to Roanoke Rapids, North Carolina on a thirty-day emergency leave to attend the funeral of his father. During this leave he was married in Warren County, North Carolina, but he and his wife resided thereafter at his parental home in Roanoke Rapids for two and one-half weeks, when he returned to service in the United States Army.

On May 4, 1962, the plaintiff was separated from active service and returned to his home in Roanoke Rapids, North Carolina, for about a week. On May 7, 1962, he made an initial application with the Employment Security Commission in Roanoke Rapids, North Carolina, to receive certain veteran benefits to which he was entitled. He gave his mother's home address in Roanoke Rapids, North Carolina as the mailing address for his checks; however, he listed his address as Hampton, Virginia. Plaintiff could have filed his claim for these benefits

anywhere in the country if he so desired. The Commission paid him for three weeks.

Following his visit in Roanoke Rapids, North Carolina, plaintiff returned to Tidewater Virginia where he sought employment. He accepted a job as a student welder with the Newport News Shipbuilding and Drydock Company in Newport News, Virginia. After he had secured employment with the shipyard, he moved from his sister's home in Hampton, Virginia, into a boarding house at 224 — 44th Street, Newport News, Virginia. He had, during this period, opened a checking account with the Bank of Hampton Roads.

The plaintiff's accident occurred on June 30, 1962. He received emergency treatment while he was unconscious at the Roanoke Rapids Hospital at Roanoke Rapids, North Carolina, and the next day he was transferred to the Medical College of Virginia in Richmond, Virginia. He was hospitalized there until he was discharged on October 3, 1962. Following his discharge, he spent about three weeks convalescing at the home of his sister, Mrs. Frances Twisdale in Hampton, Virginia. Thereafter he spent several weeks with his mother and unmarried brothers in Roanoke Rapids, North Carolina. He later returned to his sister's home in Hampton, Virginia until December 24, 1962, at which time he, his sister, and her family traveled to Roanoke Rapids, North Carolina for the Christmas holidays. Because of the nature of plaintiff's disability he remained in Roanoke Rapids, North Carolina where he could be attended to and cared for by his brothers. Except for two periods of hospitalization in Richmond, the plaintiff has resided in Roanoke Rapids, North Carolina, since December 24, 1962. During this time he has been admitted to the Woodrow Wilson Rehabilitation Center at Fishersville, Virginia.

The plaintiff testified that he had never registered to vote and had never listed his personal property for tax purposes and that he owned no real estate. He could not recall in which state he had filed his federal income tax returns, although he claimed he had filed them.

## CONCLUSIONS OF LAW

■ Defendants' motion to dismiss on the ground that diversity of citizenship is lacking puts in issue plaintiff's allegation that he is a citizen of Virginia and places upon plaintiff the burden of establishing his Virginia citizenship and his domicile there by a preponderance of the evidence. The existence of diversity of citizenship is to be determined not as of the time the cause of action arose but as of the time suit was instituted. Janzen v. Goos, 302 F.2d 421 (8th C.C.A. 1962); Boesenberg v. Chicago Title & Trust Company, 128 F.2d 245, 141 A.L.R. 565 (7th C.C.A. 1942). In this case the domicile or citizenship of plaintiff must be determined as of December 7, 1962, the date the complaint was filed. For this purpose citizenship and domicile are used synonymously. Janzen v. Goos, supra, Scott v. Pennsylvania Railroad Company, 9 F.R.D. 27 (E.D.Pa.1949).

■ Generally speaking domicile is an individual's place of residence where he intends to remain permanently or indefinitely and to which he intends to return whenever he is away. Each person can have only one domicile at any one time and that domicile continues until another is established. A bona fide change of domicile can be effected at any time by any person, sui juris, but a change or acquisition of domicile is largely a matter of intention and the motive therefor is completely immaterial. See the discussion in 28 C.J.S. Domicile.

■ This general rule is stated in 28 C.J.S. Domicile § 9:

"For the acquisition of a domicile of choice, actual residence in a particular locality and intent to remain are required, or must concur. The intent to remain may be formed after removal to the new location.

"Domicile of choice is entirely a question of residence and intention,

or, as it is frequently put, of factum and animus. * * * "

See also in this connection Stine v. Moore, 114 F.Supp. 761, affirmed 213 F.2d 446 (5th C.C.A. 1954).

The facts in this case support, by a preponderance, plaintiff's allegation that he was a citizen of Virginia at the time he filed this suit on December 7, 1962. As an emancipated teen-ager in 1957 or 1958, he had established a domicile in Norfolk, Virginia, where he lived and worked. There he entered the service. While in North Carolina in 1961 on an emergency leave, he married and cohabitated with his wife for two and one-half weeks in Roanoke Rapids, North Carolina. They have not lived together since. After his separation from service in May 1962, he spent one week in Roanoke Rapids, North Carolina, and then went to the Virginia Peninsula where he sought and secured gainful employment in Newport News, Virginia. He lived and worked there four or five weeks prior to his accident. He had established an account with a local bank there. After several months hospitalization in Richmond, Virginia, plaintiff was discharged and went to live with his sister and her family in Hampton, Virginia. Except for a few weeks visit to his parental home in Roanoke Rapids, North Carolina—probably in November 1962— he lived in Hampton, Virginia, with his sister and did not return to North Carolina until Christmas Eve 1962.

██ Under these facts this plaintiff had acquired a domicile in Newport News, Virginia, following his Army separation. If he acquired or established a new domicile after his accident, such domicile was his sister's home in Hampton, Virginia where he was living at the time this suit was instituted and where he had been living for many weeks after his period of hospitalization.

A domicile, once acquired, continues and is presumed to persist until it is shown to have been changed. Janzen v. Goos, supra. There is no evidence to show any intent on plaintiff's part to change his domicile from Newport News, Virginia to Roanoke Rapids, North Carolina after his accident up through December 7, 1962. The plaintiff has satisfied the court by a preponderance of the evidence that on December 7, 1962, his residence was, in fact, in Hampton, Virginia, and, concurring with that fact, was his intention to make that residence his home indefinitely.

### ORDER

Therefore, it is ordered that the defendants' motion to dismiss this action be, and the same is hereby denied.